IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| AARON K.F. WON, | ) | Civ. No. 06-00242 SOM-KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION TO DISMISS DEFENDANT |
| vs. | ) | LOPEZ, DENYING PLAINTIFF'S |
| | ) | MOTION TO AMEND COMPLAINT, AND |
| ELLEN DIAS, et al., | ) | GRANTING DEFENDANTS' MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT LOPEZ, DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On May 3, 2006, Plaintiff Aaron Won, proceeding *pro se*, filed this prisoner civil rights suit.  Before the court is Defendants'[1] Motion for Summary Judgment ("Motion") brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 55.)  Won has filed an Opposition to the Motion as well as a Motion to Dismiss Defendant Frank Lopez and to Amend the Complaint.[2]  (Doc. Nos. 76 & 77.)  Defendants have replied to

---

[1] The Motion was filed by Defendants Clayton Frank (former Halawa Correctional Facility ("HCF") Acting Warden), Frank Lopez (former Department of Public Safety ("DPS") Acting Director), Richard Condon (HCF Social Services Assistant), and Ellen Dias (HCF Adult Correctional Officer ("ACO")) (collectively, "Defendants").  Defendants are named in their individual and official capacities.

[2] Although Won also calls his Opposition a "Request for Summary Judgment," his filing does not appear in substance to be a cross-motion for summary judgment and does not comply in form with the local rules for such a motion.  The court therefore does not treat it as such.

Won's Opposition and Won's Motion to Dismiss and Amend.  (Doc. Nos. 80 & 81.)

Defendants assert that: (1) they are entitled to Eleventh Amendment immunity with respect to claims for money damages against them in their official capacities; (2) they did not personally participate in the alleged violations; (3) Won has failed to state a violation of the Eighth Amendment; (4) they are entitled to qualified immunity; (5) the court should decline to hear Won's state law claims if he has, in fact, presented any; (6) Won is not entitled to punitive damages; and (7) Won's failure to comply with the federal and local rules governing this Motion entitles them to summary judgment.

Won seeks to dismiss Defendant Frank Lopez, and to amend his Complaint to name HCF Deputy Warden Eric Tanaka as a Defendant in this suit and allege claims against Tanaka.

Won's Motion to Dismiss Defendant Lopez is GRANTED. Won's Motion to Amend the Complaint is DENIED.  Defendants' Motion for Summary Judgment is GRANTED.

## I. <u>UNCONTROVERTED FACTS</u>[3]

Won is a former member of the Maui Police Department and is now an inmate under the custody of the Hawaii Department of Public Safety.  During the time at issue here, Won was housed

---

[3] The uncontroverted facts herein are taken from Won's verified complaint and Opposition, and Defendants' Motion and Concise Statement of Facts. (Doc. Nos. 1, 55, 56 & 77.)

in protective custody ("PC") at the HCF Special Needs Facility, Module A, Quad 1, upstairs Cell 3.[4]

On February 21, 2006, Third-Party Defendant Alden Pauline,[5] an HCF inmate, was placed in PC, Module A, Quad 1, downstairs Cell 9.  Four days later, on February 25, 2006, Pauline left his own area in the Quad, went upstairs to Won's cell, and punched Won in the face.  Pauline allegedly asked Won, "What, you got one problem with me?" and, before Won could reply, struck Won in the face.  (Comp. 5.)  As he returned downstairs, Pauline allegedly said, "I hate cops, you lucky I don't break your neck."  (*Id.*)

Won reported the assault to prison personnel within one minute and was taken immediately to the HCF medical unit for treatment.  Won was then taken to the Pali Momi emergency room, where medical personnel determined that he had a broken nose and other cuts and contusions.  Approximately two weeks later, Won had reconstructive surgery for his nose.  Won states that he has permanent scarring and other physical problems as a result of the assault.

---

[4] Won states that he was placed in PC "because of anticipated exposure to violence and assault by other inmates" harboring ill will toward police officers. (Doc. No. 1, Comp. 4 ¶ 3.)

[5] Defendants filed the Third-Party Complaint naming Pauline as responsible for the assault against Won on the same day that they filed their Answer to Won's Complaint. (Doc. Nos. 22 (Answer) & 23 (Third-Party Comp.))

## II. <u>DISCUSSION</u>

A.   <u>Won's Motion to Dismiss Defendant Lopez is Granted; Won's
     Motion to Amend the Complaint is Denied.</u>

Won moves, pursuant to Rule 15(a) of the Federal
Rules of Civil Procedure, to dismiss Defendant Lopez and to amend
his complaint to substitute HCF Deputy Warden Eric Tanaka in his
place.  Further, although Won does not say that he wants to amend
his complaint to add negligence claims against all Defendants, in
his Opposition to the Motion Won argues that Defendants were
negligent.  Won included no state law claims in the original
Complaint, alleging only a violation of the Eighth Amendment.

Defendants do not oppose Won's Motion insofar as it
seeks to dismiss Defendant Lopez.  Moreover, after carefully
considering Defendants' Motion as it relates to Lopez, the court
concludes that Lopez was improperly named as a Defendant in this
action.  Accordingly, the court **GRANTS Won's Motion to Dismiss
Defendant Lopez**.  *See* Fed. R. Civ. P. 21 (providing that
"[p]arties may be dropped or added by order of the court on
motion of any party or of its own initiative at any stage of the
action and on such terms as are just.")

Defendants do, however, oppose Won's Motion to Amend
the Complaint, arguing that the time to amend the Complaint to
add parties and claims is long past and that Won has not acted in
good faith or with the diligence required to allow such an
amendment at this time.  The court agrees.

4

Because a Rule 16 Scheduling Order was entered more than a year ago in this action, setting March 6, 2007, as the final date for amendment of the pleadings, a date long past, Rule 15's more lenient standard for amendment of the pleadings no longer governs. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).  Rule 16 is the operative rule for determining whether Won may amend his pleadings at this late date.

Under Rule 16 of the Federal Rules of Civil Procedure, the pretrial scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The order should be modified only when, "despite the diligence of the party seeking the extension," the scheduling order's dates cannot be met. *Johnson*, 975 F.2d at 609 (quotations omitted). The court must evaluate whether the party seeking the extension can show good cause by evaluating that party's diligence.  If a party has not been diligent, the Rule 16 inquiry should end.  *Id.*

Here, Won's only excuse for his failure to meet the scheduling deadline is that he is a layman, and that he was unaware that Tanaka had approved Pauline's transfer to PC.  Won is a former police officer.  He, more than the average *pro se* litigant, should have been aware of his duty to carefully research his claims prior to and after commencing his action.  As

5

a former police officer, Won knew that, at some point, he would have to support his claims with evidence obtained through discovery, and that he would not be able to simply rest on the allegations in his complaint.

Further, Won should have been aware of his responsibility to comply with the court's scheduling rules and other procedures. Although he is proceeding *pro se*, Won must comply, or at least try to comply, with the court's deadlines, rules, and procedures. *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (stating that "[p]ro se litigants must follow the same rules of procedure that govern other litigants.").

In the year since the Rule 16 scheduling order was issued, Won has initiated no discovery whatsoever to support the allegations in his Complaint. He requested no documents, sent no interrogatories, and filed no affidavits or declarations in opposition to the motion. While his allegations were certainly adequate to state a claim, it is inconceivable that Won believed that he did not have to do anything to defeat Defendants' motion. Had he made even the most modest attempt at discovery, or to explain his failure to do so, this court might be more inclined to decide that he acted with diligence in prosecuting this

action.[6]  Instead, Won has failed to conduct any discovery to
date.  At the hearing on the Motion, Won said that he failed to
conduct discovery or abide by the court's scheduling dates and
other rules because he is incarcerated, Defendants would not have
provided the information if he had asked, and he "had a lot of
things going on right now."  Won mentioned that he had questioned
"a few guards," but was not specific about what he asked.  He
said they told him they "did not know" what he asked.  Won
conceded that he "might have missed a couple rules" and agreed
that "if the time ran, the time ran."

     Defendants clearly provided Won with the required
warnings of the summary judgment duties he had.  (*See* Doc. No.
57, entered Oct. 22, 2007, "Notice and Warning to Pro Se Litigant
of Requirement of Rule 56 and Local Rule 56.1.")  Won has made
the barest effort to comply.  Nor has he moved at any time
pursuant to Rule 56(f) to continue the hearing on the Motion so
that he might conduct discovery.

---

     [6] Won concedes the need for discovery in his self-serving
statement that, although he has not done so yet, he intends to
subpoena Pauline's prison disciplinary, medical, and mental
health records to support his claims that Pauline was a known
threat to others, and that Defendants acted either negligently or
with deliberate indifference when they approved Pauline's
transfer to PC. (Pl.'s Opp. 3.)  Without indicating that all of
such discovery would be permissible, this court sees this
concession by Won as indicating his understanding of discovery
procedure, and obligations.

More troubling is the fact that Won learned of Tanaka's involvement in Pauline's transfer to PC by at least October 22, 2007, the date that Defendants filed their Motion.  Despite this, Won waited until days before the hearing on the Motion before moving to amend his Complaint.[7]  At the hearing, Won had no explanation for his failure to immediately move to amend, other than to suggest that little time had passed from the date he received notice of Tanaka's involvement and when he finally moved to amend his complaint.  In fact, approximately two months intervened, even assuming the filing of the Motion was Won's first indication of Tanaka's involvement.

Nor does Won's newly added assertion of negligence claims in his Opposition circumvent the requirement that he seek leave to amend his Complaint *before* adding new claims, and follow the rules for doing so.  *See Pickern v. Pier 1 Imports (U.S.),*

---

[7] Won's Opposition to the Motion was due on December 20, 2007.  The court received the Opposition on December 26, 2007. Won states that, although he sent his Opposition on December 19, 2007, it was returned by the U.S. Postal Service.  It is unclear whether Won used the prison's legal mail system to mail his documents, although that does not appear to be the case.  Because Defendants received Won's Opposition on December 20, 2007, *see* Doc. No. 79, Won's untimely filing has not prejudiced them.  For future reference, however, Won should be aware that, to be entitled to the protection afforded by the "prison mailbox" rule, under which a prisoner's documents are deemed filed on the date that the prisoner hands the document to prison authorities for mailing, a prisoner must use the prison's legal mail system, and this must be in some manner verifiable.  *See Houston v. Lack*, 487 U.S. 266 (1988); *Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).

*Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (holding that plaintiff may not add new ADA claims or theories in response to motion for summary judgment).

Won has not adequately explained why he was untimely in seeking an amendment of his Complaint. Even if he were able to explain and justify his failure, Won failed to submit a proposed amended Complaint with his Motion to Amend, detailing what claims he seeks to add to the amended Complaint in addition to his desire to name Tanaka as a defendant. *See* Local Rule LR10.3; 3 James Wm. Moore et al., Moore's Federal Practice, § 15.17[1] (3d ed. 2007) ("To obtain leave to amend, the party's motion should attach a copy of the proposed amendment or new pleading. Failure to attach the proposed amendment is not necessarily fatal, but may result in denial of leave to amend on the grounds that the court cannot evaluate the propriety of granting leave unless the court is presented with the substance of the proposed amendment." (citation omitted)). This failure, particularly when Won makes new state law negligence allegations in his Opposition to the Motion without further explanation, makes it impossible for the court to determine whether amendment to his Complaint would be feasible or futile.

Won's inaction simply does not support a finding that he acted with the diligence required for this court to find good

cause to amend the scheduling order so that he may now amend his complaint.  **Won's Motion to Amend IS DENIED.**

**Entry of judgment, however, will be postponed until February 15, 2008.**  If Won can provide some good cause, beyond the inadequate excuses he proffered at the hearing and in his Opposition, and can articulate his proposed amended claims in a draft amended Complaint, so that the Magistrate Judge assigned to this case can evaluate the viability of his proposed amendment, he may move to amend the Complaint.  This means that Won must file any such motion with the Magistrate Judge **on or before February 15, 2008.**

Won may instead opt to file a new complaint against Tanaka alleging § 1983 violations, and include in that complaint state law claims against Tanaka and/or others.  The court is making no determination here on the futility or viability of such claims, or on whether they might be barred because they should have been raised in the present case.  If Won does decide to file a new lawsuit, he should keep in mind the date that the incident occurred, and the applicable statutes of limitation for his claims.[8]

---

[8] As the incident at issue here occurred on February 25, 2006, Won is still within the limitation period for commencing another action.  *See Pele Defense Fund v. Paty*, 837 P.2d 1247, 1260, 73 Haw 578, 597-98 (1992) (holding that the two-year "general personal injury" limitation period applies to § 1983 actions in Hawaii).  If Won believes, after considering what the present order says, that he can allege and prove a constitutional

B.    Defendants' Motion for Summary Judgment is Granted.

Won alleges that Defendants violated the Eighth Amendment by failing to protect him from Pauline's assault.  (*See* Comp. Count I.)  Specifically, Won alleges that Defendants Frank and Condon "failed to protect [him] from Pauline, when they knowingly recommended and approved inmate Pauline's placement and transfer to PC" and failed to follow DPS policies and procedures regarding placing inmates in PC, directly resulting in Pauline's assault on him.  (Comp. 2, 4, 4(a), 4(b).)  Finally, Won asserts that Dias failed to follow and enforce a DPS rule prohibiting PC inmates housed in the lower level from going to the upper level, and failed to intervene in the assault.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

_____

violation in federal court, he is also entitled to tolling of the statute of limitation during the time he was administratively exhausting his claims.  *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005).  On the other hand, Won may decide to take his negligence claims against Defendants to the state court in the first instance, although he should consider whether his failure to raise those claims in this action might act as a bar.

1.    <u>Summary Judgment Standard.</u>

Effective December 1, 2007, Rule 56(c) of the Federal Rules of Civil Procedure has been amended.  Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (effective Dec. 1, 2007).  "The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules.  These changes are intended to be stylistic only."  Rule 56 Advisory Committee Notes, 2007 Amendments.  Because no substantive change in Rule 56(c) was intended, the court interprets the new rule by applying precedent related to the prior version of Rule 56(c).

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  *See Celotex*, 477 U.S. at 323.

A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323); *accord Miller*, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." *Miller*, 454 F.3d at 987.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir.

13

2003); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Miller*, 454 F.3d at 988 (quotations and brackets omitted).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323.  In inmate cases, the court must

> distinguish between evidence of disputed
> facts and disputed matters of professional
> judgment. In respect to the latter, our
> inferences must accord deference to the views
> of prison authorities. Unless a prisoner can
> point to sufficient evidence regarding such
> issues of judgment to allow him to prevail on
> the merits, he cannot prevail at the summary
> judgment stage.

*Beard v. Banks*, — U.S. —, —, 126 S. Ct. 2572, 2576 (2006).

2.   Eleventh Amendment Immunity

Defendants argue that, as State employees, they are entitled to immunity from suit for damages in their official capacities.   The Eleventh Amendment bars damages actions against state officials in their official capacities.   *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

14

The Eleventh Amendment "bars suits against a state or its agencies, regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity." *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005) (quoting *Yakama Indian Nation v. State of Wash. Dep't of Revenue,* 176 F.3d 1241, 1245 (9th Cir. 1999)); *see also Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267-68 (1997).  Unless a state unequivocally waives sovereign immunity or Congress has acted to override that immunity, the state, its agencies, and its officials are immune from suit for damages.[9]  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).

Moreover, state officials sued in their official capacity for damages are not "persons" for purposes of § 1983. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will*, 491 U.S. at 71.

The State of Hawaii has not unequivocally waived its sovereign immunity in this case, nor are any official capacity Defendants persons within the meaning of § 1983.  Summary

---

[9] Defendants did not waive their entitlement to sovereign immunity by filing a Third-Party Complaint naming Pauline, as they had already timely asserted the defense when they answered Won's complaint.  *See Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1149 (9th Cir. 2007).

judgment is granted as to all claims for damages against all Defendants named in their official capacities.[10]

3.   Defendants' Alleged Failure to Protect

Won alleges that Defendants "over-looked [DPS] [policies and procedures]" and that Defendants' alleged "negligence . . . led to this unprovoked attack and incident."[11] (Pl.'s Opp. 2.)  Won asserts that this negligence was "serious enough to amount to a constitutional violation." (*Id.* at 8.) Won states that Defendants knew, or should have known, of Pauline's "unprovoked aggressive assaults on other inmates, which was the very reason for [Pauline's] request to P.C., seeking protection from other inmates retaliation." (*Id.* at 3.) Although Won does not provide evidence of Pauline's allegedly aggressive behavior or assaults on other inmates, he states that he intends to "subpoena Alden Pauline's Medical, psychological, suicidal, unprovoked attacks on other inmates, and HCF Records to

---

[10] Eleventh Amendment immunity does not bar claims for prospective injunctive relief against state officials sued in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839.  Won does not seek prospective injunctive relief, however, and, because he has been transferred from HCF, he lacks standing to pursue claims for such relief. *See Dilley v Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995)

[11] As noted above, the court will not address Won's new state law theory based on negligence, as negligence was not alleged in the original Complaint. *See Pickern*, 457 F.3d at 968-69.  The court discusses the negligence allegations only insofar as they relate to an alleged constitutional violation.

show said conditions existed at the time of this incident."
(*Id.*)

Defendants argue that Won has failed to state an Eighth
Amendment violation as a matter of law, because he has failed to
allege facts showing that any currently named Defendant acted
with deliberate indifference to his safety.  (Defs.' Mot. 10.)
Defendants argue that they were not personally involved with and
did not participate in any alleged Eighth Amendment violation.
Defendants state that Frank had no responsibility for Pauline's
transfer to protective custody and cannot be held liable under
theories of respondeat superior or supervisory liability.
Defendants admit that Condon reviewed Pauline's request for
transfer to PC and referred his findings to HCF Deputy Warden
Eric Tanaka for a determination as to whether protective custody
was appropriate, and that Dias was present during the attack.
However, Defendants argue that Condon and Dias were simply "doing
. . . their respective jobs" and did not act with deliberate
indifference to Won's safety.  (Defs.' Mot. 13.)

Prison officials have a duty to protect inmates from
violence at the hands of other inmates.  *Farmer v. Brennan*, 511
U.S. 825, 833 (1994).  "Having incarcerated 'persons [with]
demonstrated proclivit[ies] for antisocial criminal, and often
violent, conduct' . . . [and] having stripped [inmates] of
virtually every means of self-protection and foreclosed their

17

access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id.* (citations omitted).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *Id.* at 834. To be liable for a failure to prevent harm, the official must know of and disregard an excessive risk to inmate safety. *Id.* at 837. The official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. *See id.* The official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Before being required to take action he must, however, have more than a "mere suspicion" that an attack will occur. *Id. at* 459-60 (summary judgment was appropriate when the plaintiff "failed to come forward with any facts showing that these defendants had any reason to believe he would be attacked by the assailant").

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See*

*Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). As *Leer* explains:

> [The court] must focus on whether the individual defendant was in a position to take steps to avert [the harm], but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, [the court] must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. . . . Especially when . . . a prisoner seeks to hold a prison employee individually liable because another prisoner attacked him, the prisoner must establish individual fault. . . . Sweeping conclusory allegations will not suffice to prevent summary judgment. . . . The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

*Id.* at 633-34 (internal citations omitted).

    a.   <u>Defendant Frank is Entitled to Summary Judgment.</u>

Won attempts to tie Frank to his claim solely by virtue of Frank's position as HCF Acting Warden.

There are two theories under which a state official may be liable under § 1983 for actions or omissions in his or her individual capacity: (1) personal involvement in the act or omission that caused the injury; or (2) a sufficient causal connection between the official's acts or omissions and the

19

injury.  There is no respondeat superior liability under § 1983.
*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A
supervisor may be held liable for the constitutional violations
of subordinates if the supervisor "directed the violations, or
knew of the violations and failed to act to prevent them."
*Id.* at 1045.  If the state official was not personally involved
in the alleged constitutional deprivation, then a plaintiff must
show that the official "implement[ed] a policy so deficient that
the policy 'itself is a repudiation of constitutional rights' and
is 'the moving force of the constitutional violation.'"  *Redman
v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991).

Frank is entitled to summary judgment.  Won alleges
that Frank approved Pauline's transfer to PC, and that, but for
that approval, Pauline would not have attacked Won.  Won says
that Frank either knew or should have known of Pauline's mental
health issues, aggressiveness, and potential for causing harm to
Won or others.

Frank denies this allegation, stating that, as HCF
Acting Warden, he always delegated the decision-making authority
for transferring inmates to PC to his Deputy Warden, Eric Tanaka.
(Frank Dec. ¶ 4.)  Frank invested Tanaka with the authority to
review, approve, and disapprove inmate requests for transfer to
PC.  Frank states that he had complete confidence in Tanaka's
decisions in this regard given his years of experience working

20

with Tanaka.  (*Id.*)  Frank did not oversee these types of

decisions, believing that Tanaka had the expertise to make such

determinations without supervision.

Tanaka approved Pauline's transfer to PC on or about

February 17, 2006, after he had referred Pauline's request for

protection to Condon for review, and Condon had verified that

Pauline had valid reasons for requesting protection.  (Frank Dec.

¶ 5.)  Frank, however, had no involvement with either the

approval of Pauline's request to transfer to PC or the

verification of Pauline's reasons for requesting the transfer.

(*Id.* ¶ 6.)

Won states, without evidentiary support, that Pauline

"is a dangerous individual with a violent history in prison" who

"also has mental health issues including attempts at suicide."

(Comp. 4b.)  Won alleges that Pauline's prison records "should

reflect his violent history."  (*Id.*)  Won further claims that

Pauline was in administrative segregation prior to his transfer

to protective custody, suggesting that Pauline was therefore a

known disciplinary problem for the prison.  While these

allegations may indeed be true, Won has failed completely to

provide evidence of his claims.  He chose not to conduct

discovery, and he supplies no evidentiary support for these

claims about Pauline's allegedly known prison behavior problems.

Won submits DPS policies and procedures that set forth factors to be considered before an inmate is put in protective custody.  Inmates who are "a threat to themselves, staff or other inmates" or who are "a behavior management case[s]" are not to be placed in the general PC population.  (*See* Pl.'s Ex. A 17, DPS Policy No.: COR.11.03., 4.0.2.b.1.)  Such inmates are to be housed separately from the general PC population and allowed no contact at any time with that population.  (Pl.'s Ex. A 17, DPS Policy No.: COR.11.03., 4.0.2.b.2.)  DPS policy also requires that severely mentally disturbed inmates be housed "in appropriate therapeutic housing" and separated from other inmates.[12]  *(Id.,* COR.10A.15.3.0 et seq.)

Rather than support Won's claims against Frank, these written DPS policies substantiate Frank's assertion that he had no personal involvement in the attack at issue here, and did not, in fact, implement a policy or procedure that was "so deficient

---

[12] Neither Won nor Defendants detail whether Pauline or Won was housed in Protective Housing Unit I ("PHU-I"), where inmates who require protection but do not pose a threat to others are placed, or in PHU-II, where inmates are housed in solo cells, and are generally segregated from all other inmates.  DPS policies explicitly prohibit placement of inmates in PHU-I, unless they can be "housed, work, eat, and use inside and outside recreation together, WITHOUT THE NEED FOR SEPARATION AND PROTECTION FROM EACH OTHER."  Pl.'s Ex. A 17, DPS Policy No.: COR.11.03., 4.0.5.a.1.  Moreover, inmates placed in PHU-I "shall have an institution history of non-violent behavior and a positive psychiatric evaluation relative to violence potential."  (*Id.,* DPS Policy No.: COR.11.03., 4.0.5.a.3.)

that [it was] a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman*, 942 F.2d at 1446.  These policies, if followed, appear to provide adequate protection for all PC inmates.

Although Won states that he will subpoena Pauline's medical and correctional records, which he believes will show that Pauline was a known threat to himself and others and should never have been placed in a section of the PC where he was not adequately monitored, Won has not done so.  Taking judicial notice of its own records and files, however, the court notes that Pauline has filed suit in this court against DPS and its employees for their alleged failure to provide him with appropriate mental health care.  *See Pauline v. Patel*, Civ. No. 06-00541 JMS, and *Pauline v. Patel*, Civ. No. 07-00411 HG. Pauline's pleadings do indeed suggest that he has mental health issues.  While making no determination as to the veracity or merits of Pauline's assertions, the court, for purposes of this Motion, accepts Won's statements that Pauline has psychiatric problems.  When these problems arose or became evident, however, is uncertain and not discernable from the evidence now before the court.  Thus, even assuming Pauline had psychiatric problems, the lack of evidence showing when these problems became evident or whether Frank, or any of the named Defendants, was aware of these problems before Pauline's transfer to PC leaves the court with no

basis for finding a genuine issue of fact as to whether Frank was or should have been aware of Pauline's mental issues and should have acted to prevent Pauline's transfer to PC.

Won fails to show that Frank acted with deliberate indifference to Won's safety.  Frank did not approve Pauline's transfer, and he reasonably delegated responsibility for PC requests and transfers to Tanaka.  Frank implemented no policy resulting in the attack.  As Won fails to show that Frank had any personal involvement in the transfer or the assault, summary judgment is GRANTED with respect to Won's claims against Frank.

b. <u>Defendant Dias is Entitled to Summary Judgment.</u>

The uncontroverted facts relating to Dias's involvement in the assault, as taken from Won's allegations in his complaint and Dias's declaration, are as follows:  Between 4:30 p.m. and 9:30 p.m., PC inmates have "free time," when lockdown is lifted and inmates may leave their cells.  During this somewhat hectic time, at approximately 4:55 p.m., Pauline left his cell, went upstairs to Won's cell, asked if Won had a problem with him, punched Won in the face, and, before Won was able to respond, returned downstairs.  It takes only seconds to walk up the stairs to Won's cell.  (Dias's Dec. ¶ 13.)  Within one minute of the attack, at 4:56 p.m., Won reported the assault to ACO Kumai.

Won alleges that Dias, who was in the cellblock control box at the time, breached her duty by failing to prevent Pauline

from going upstairs.  Won does not allege that Dias had any knowledge that Pauline was a danger to Won or others, or that she knowingly allowed Pauline to violate any prison rule, or that she was in any manner deliberately indifferent to Won's safety, or acted with malice or intent to cause him harm.  He simply alleges that Dias's failure to enforce the prison's Special Needs Facility Guidelines, Standard 21, forbidding inmates to leave their own areas to go either upstairs or downstairs, was negligent and resulted in his assault.

Dias states that, during "free time," while she is generally monitoring all inmate activities in the Quad, she is also answering inmate telephone calls, distributing inmate mail and request forms, arranging supervision for inmates entering and leaving the PC area for appointments, logging these inmates in and out of the area, and allowing prison staff into and out of the area.  She asserts that she had no reason to believe that Pauline, or any other inmate, intended to violate Standard 21, by going upstairs, or by assaulting another inmate.  (Dias Dec. ¶ 11.)  Dias did not see or hear Pauline go up the stairs, nor did she see the assault.  She first became aware of the incident when Won reported it.  Dias says, and this is borne out by Won's own timeframe, that the "incident occurred, practically speaking, within the blink of an eye." (*Id.* ¶ 16.)  Dias further states that she never intended for the assault to occur and cannot think

25

of what she could have done differently to prevent the assault. (*Id.*)

Won presents no evidence that Dias saw Pauline going up the stairs and failed to apprehend him, or heard Pauline make threats against Won or others, or otherwise knew that Pauline was a threat to other inmates in general or to Won in particular. Dias's failure to notice that Pauline had left the downstairs area to go upstairs, for less than one minute, might lead to a conclusion that Dias was somewhat negligent in her duties, or that the prison was negligent in not assigning more guards to limit prisoner involvement.  But negligence is not sufficient for liability under § 1983.  *Farmer*, 511 U.S. at 838.  Prison officials must know of and disregard an excessive risk to inmate health or safety to violate § 1983.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference."  *Id.* at 837.  The evidence in Won's Complaint and Opposition does not show that Dias or anyone else actually knew or should have known of an excessive risk to another person's health or safety and chose to disregard it.  Further, even "'[i]f a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  *Toguchi v. Chung*, 391 F.3d 1051,

26

1057 (9th Cir. 2004) (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Won argues that Dias should have known about the DPS policies forbidding downstairs PC inmates from mixing with upstairs PC inmates, and suggests that Dias was not properly trained.  Won provides no facts to support his theory of Dias's inadequate training, however, other than the DPS policies regarding staff assignments to the PC modules.  Those policies state that "[s]pecially screened staff shall be assigned to the [PC] unit with consideration given to the nature of the inmates in the units and the personality, training, and performance record of staff members being considered."  Pl.'s Ex. A 17, DPS Policy No.: COR.11.03., 4.0.9.a.  The policy also requires that PC staff shall receive "special orientation and training as to the function of the unit, rules governing its operation and the need and problems typical of inmates in protective custody."  *Id.*, DPS Policy No.: COR.11.03., 4.0.9.b.

Dias is a fifteen-year DPS employee.  She had at least four years of experience working at the Halawa Special Needs Facility, where the PC unit is located.  She does not say that she was unaware of the policy that prohibits certain PC inmates from mixing with others (ie., upstairs inmates with downstairs inmates).  She simply states that she did not notice anything amiss on February 25, 2006, that she was carrying out her usual

duties, and that she does not believe that there was anything she could have done under the circumstances.  There is nothing to suggest, either from any of Defendants' declarations, or from the DPS policies and procedures provided by Won, that Dias, as an adult correctional officer working in the PC unit, knew of Pauline's allegedly violent tendencies, or that she had a duty to make herself aware of Pauline's psychiatric background and history at Halawa in general.

Although Won asserts that she had such a duty, this court does not agree.  Even if Dias purposely failed to follow internal DPS policies requiring separation of upstairs and downstairs inmates, this by itself would not create a legally enforceable duty.  *See Concrete Tie of San Diego v. Liberty Construction, Inc.*, 107 F.3d 1368, 1372 (9th Cir. 1997) ("Policies are the result of discretionary decisions and are established to guide the agency's employees; a declaration of policy does not create a legally enforceable duty.").

Taken in the light most favorable to Won, the facts alleged are insufficient for a reasonable jury to conclude that Dias acted with deliberate indifference to his health or safety. Summary judgment is GRANTED with respect to Won's § 1983 claims against Dias.

     c.   <u>Defendant Condon is Entitled to Summary Judgment.</u>

Won alleges that Condon is liable for failing to protect him from Pauline's assault because he failed to properly screen Pauline before referring his request for transfer to protective custody to Tanaka.  Won alleges that Condon, as a "[c]ounselor, should have had first hand information on Pauline, regarding all of his problems, thereby advising [Deputy Warden Eric Tanaka] of said problems." (Pl.'s Opp. 7.)  Won alleges that knowing such information about Pauline was "part of [Condon's] job description," and that Condon should be "held fully liable for negligence." (*Id.*)  Won provides no support for his allegations concerning Condon's position or job description.

Condon is a Social Services Assistant V.  He states that his involvement with any inmate's request for transfer to protective custody is limited to meeting with the inmate, ascertaining the inmate's reasons for needing protection, and then giving this information to Deputy Warden Tanaka. (Condon Dec. ¶ 3.)  Tanaka is responsible for verifying that the inmate's proffered reasons are valid and warrant placement in PC.

Tanaka referred Pauline's request for PC to Condon, who then met with Pauline to determine his reasons for requesting protection.  Condon says that Pauline told him that he was afraid of attack by certain alleged gang members and had other confidential reasons for needing protection. (Condon Dec. ¶ 6.)

29

Pauline's request, which is attached to Defendants' Concise Statement of Facts as Exhibit C, has been redacted to maintain its confidential nature.  Condon apparently verified Pauline's reasons, which included a list of inmates that Pauline feared, and forwarded this verification to Tanaka for review and action. Condon states that he was unaware of "any animosity or bad blood between Pauline or Won or between Inmate Pauline and any other inmates then housed in PC at Halawa High."  (*Id.* ¶ 5.)

Won does not adequately counter Condon's sworn statements that he had no information or reason to believe that, by verifying Pauline's reasons for requesting protective custody, he was deliberately indifferent to Won's safety.  Although Won alleges that Pauline requested a transfer to PC to get away from other inmates who might retaliate against Pauline for his prior assaults against them, this allegation is unsupported.[13]  There is no evidence before the court, other than Won's unsupported allegations, that Condon knew or had reason to know that Pauline posed a particular threat to Won or to other PC inmates, militating against Pauline's transfer to PC.

---

[13] Won states, "Defendants should have known . . . of . . . Pauline's extensive on-going history of medical, psychological, psychotic tendencies with numerous attempts of suicide, and unprovoked aggressive assaults on other inmates, which was the very reason for his request to P.C. seeking protection from other inmates['] retaliation."  Pl.'s Opp. 3.

That is not to say that such information was not available to others, such as Tanaka, although even that allegation is, as yet, unsupported.  That determination was not for Condon to make, however.  The unrefuted evidence shows that Condon's involvement in transfers to PC was limited to finding out the inmate's reasons for requesting protection and verifying that those reasons appeared valid.  Condon did not act with deliberate indifference to Won's safety when he verified Pauline's reasons for requesting protective custody and referred that verification to Deputy Warden Tanaka for approval.  Summary judgment is granted as to Won's claims against Condon.

4.   <u>Qualified Immunity</u>

Because the court concludes that Defendants are entitled to summary judgment against Won's Eighth Amendment claims, it necessarily follows that they are entitled to qualified immunity.  Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense permits defendants to act on "a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation," thereby protecting "all but the plainly

31

incompetent or those who knowingly violate the law." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In deciding whether defendants are entitled to qualified immunity, the court must first determine whether, taking the facts alleged in the light most favorable to plaintiff, it appears that defendants' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the court determines that no "constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* Here, the inquiry ends at this step.

As explained above, there is no evidence to show that Defendants acted with "deliberate indifference" by failing to protect Won from Pauline's assault. To the contrary, the evidence shows that Frank had no involvement whatsoever with the incident, either with the decision to transfer Pauline to protective custody, or with the events surrounding the assault itself. The evidence also shows that Dias did not act with deliberate indifference to Won's health and safety. Similarly, Condon's limited involvement in the decision to transfer Pauline to PC does not establish that Condon was deliberately indifferent to Won's or any other inmate's safety. None of the named Defendants acted with deliberate indifference to Won's safety.

32

Accordingly, Defendants are entitled to qualified immunity with respect to Won's claims.

     5. <u>Punitive Damages</u>

       Won seeks compensatory and punitive damages.  Punitive damages are available under § 1983.  *See, e.g.*, *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991).  To be entitled to punitive damages, however, Won must establish that Defendants acted with an "evil motive" or demonstrated "reckless callous indifference" to his constitutional rights.  *See Smith v. Wade*, 461 U.S. 30, 56 (1983); *Dubner v. City and County of San Francisco*, 266 F.3d 959, 969 (9th Cir. 2001).  Won has not alleged facts showing that Defendants acted with the requisite evil motive or reckless indifference.  Won's claim for punitive damages is DISMISSED.

## III. <u>CONCLUSION</u>

    1.  Won's Motion to Dismiss Defendant Frank Lopez is GRANTED.

    2.  Won's Motion to Amend the Complaint is DENIED.  Won may, however, seek leave to file an amended complaint on or before February 15, 2008, if he can set forth good cause for his failure to timely move to amend the complaint, as detailed in this order.  If Won decides to seek leave to file an amended Complaint he must submit a proposed amended complaint with his motion.  Won may, of course, opt to commence a new action.

3.    Defendants' Motion for Summary Judgment is GRANTED. Specifically, the court finds that there is no evidence before the court that Defendant Frank was involved in Pauline's transfer to PC; that Defendant Condon acted with deliberate indifference to Won's safety by verifying Pauline's reasons for requesting transfer to PC and referring his request to Tanaka; or that Defendant Dias acted with deliberate indifference to Won's safety.   Therefore, the record does not support allegations that Defendants Frank, Condon, and Dias violated the Eighth Amendment, and they are entitled to qualified immunity with respect to Won's claims for damages against them.

4.    Won is not entitled to punitive damages.

5.    The Clerk is DIRECTED to terminate Won's purported cross-motion and to postpone entering judgment in this action until **February 15, 2008.**

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 11, 2008.



   /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Won v. Dias, et al.,; Civ.No. 06-00242 SOM-KSC; ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT LOPEZ, DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; dmp\ Orders 08\ Won 06-242 SOM (MSJ)